NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210614-U

NO. 4-21-0614

IN THE APPELLATE COURT

FILED
September 22, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| JEFFREY T. TAYLOR, | ) | No. 17CF170 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The trial court did not violate defendant's right to be properly admonished
pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before
accepting defendant's waiver of counsel.

(2) Defendant failed to establish he was denied due process at the hearing on his
postsentencing motions.

(3) The trial court did not impose an unauthorized extended-term sentence of
imprisonment.

¶ 2     Defendant, Jeffrey T. Taylor, was convicted of unlawful possession of a

controlled substance (720 ILCS 570/402(c) (West 2016)) and sentenced, in relevant part, to 30

months' probation. The trial court subsequently revoked defendant's probation and resentenced

him to six years' imprisonment. Defendant, who was represented by counsel, filed

postsentencing motions *pro se* requesting a new revocation hearing and a reduction of sentence.

At the hearing on defendant's motions, the court granted defendant's request to waive his right to counsel without first admonishing him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). The court ultimately denied defendant's motions, and defendant appealed.

¶ 3        On appeal, defendant argues the trial court (1) failed to substantially comply with Rule 401(a) before accepting his waiver of counsel, (2) violated his due process rights by denying him a meaningful opportunity to be heard at the hearing on his postsentencing motions, and (3) imposed an unauthorized extended-term sentence of imprisonment. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        In September 2017, the State charged defendant with unlawful possession of a controlled substance containing morphine (720 ILCS 570/402(c) (West 2016)). At defendant's initial appearance, the trial court admonished him that he had been charged with "a Class 4 felony that carries possible penalties that include one to six years in the Illinois Department of Corrections." On October 3, 2017, defendant waived his right to a preliminary hearing, and the court again informed him that he "face[d] possible penalties that include 1 to 6 years in the Illinois Department of Corrections."

¶ 6        On August 23, 2018, defense counsel informed the court that "the attorney-client relationship ha[d] disintegrated" and he could no longer represent defendant. Defendant agreed, and the court vacated counsel's appointment and appointed new counsel to represent defendant. Before the court could continue the proceedings to allow new counsel time to review the case, defendant asked the court if he could represent himself. The court informed defendant he had the right to self-representation, but also admonished him that he was facing up to six years' imprisonment and he would be held to the same standards as an attorney. Ultimately, defendant decided against waiving counsel.

¶ 7    On April 22, 2019, defense counsel indicated to the court that defendant wished to enter a negotiated plea of guilty. The parties informed the court that defendant had agreed to plead guilty in exchange for, in relevant part, a sentence of 30 months' probation. Prior to accepting his plea, the court engaged in the following exchange with defendant and his counsel:

"THE COURT: [I]s that what you wish to do?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand you do not have to plead guilty, you have a right to a trial either by a jury or the Court alone?

DEFENDANT: Yes, Your Honor.

THE COURT: Have you reviewed all those rights with your counsel?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you need me to go over any of those rights again?

DEFENDANT: No, Your Honor.

THE COURT: I've previously advised you of all the possible penalties you face. Do you need me to repeat any of those?

DEFENDANT: No, Your Honor.

THE COURT: And Ms. Magerl, do you believe your client fully understands all of his constitutional rights, you have reviewed those with him, and he knows the possible penalties?

MS. MAGERL [(DEFENSE COUNSEL)]: Yes, Your Honor. I believe he does, and we have so reviewed them."

The court accepted defendant's guilty plea and, in accordance with the terms of the negotiated plea agreement, sentenced him to 30 months' probation.

¶ 8        On August 27, 2019, the State filed a petition to revoke defendant's probation. The State alleged defendant violated the terms of his probation by committing unrelated criminal offenses in Greene County in May 2019 and by failing to report to his probation officer in the instant case. Following a hearing on the State's petition, the trial court entered an order revoking defendant's probation and continuing the matter for resentencing.

¶ 9        The court conducted a resentencing hearing on February 2, 2021. Defense counsel presented documents to the court purporting to demonstrate that defendant missed one of his probation appointments because he was at a doctor's appointment in St. Louis, Missouri, at the time. In imposing sentence, the court highlighted defendant's extensive criminal history, including "27 total convictions, which has resulted in 22 terms of community-based corrections, nine terms of probation, two terms of supervision, eight terms of conditional discharge, and one term of TASC probation, all of which have resulted in failures to comply with terms of probation and community corrections." The court ultimately sentenced defendant to the maximum extended-term sentence of six years' imprisonment.

¶ 10        On February 10 and 18, 2021, defendant, who was represented by counsel, filed *pro se* a document requesting a new revocation hearing and a document requesting a reduction of sentence, respectively. On May 18, 2021, the court conducted a hearing on defendant's *pro se* motions. Defense counsel did not receive notice of the hearing and therefore did not appear. The court informed defendant it would have to continue the matter to give defense counsel proper notice. Rather than waiting for a continued hearing, defendant informed the court he wished to waive counsel and argue the merits of his motions *pro se*. The court accepted defendant's waiver of counsel without providing any admonishments.

¶ 11    After the court accepted defendant's waiver of counsel, the following exchange ensued with respect to the merits of defendant's motions:

"DEFENDANT: I asked for a new hearing due to my probation violation or Petition to Revoke. At the hearing it was a—when I came here it was a status hearing, and [previous appointed counsel] said that he was going to have the hearing and that I would be put back on probation. Well, I knew I hadn't missed no probation and it was for failure to reply to probation. Well, you all know that I have had troubles. I, I had existing cases besides this one when I was put on probation. Well, I went to probation here, had it transferred to Greene County—

THE COURT: Mr. Taylor, we're not going to go back through all of it. I heard the hearing. I made my finding. I'm not going to reverse my finding. I've already heard the evidence.

DEFENDANT: They, they—

THE COURT: I've already found your probation was revoked. We had been set on that case for years, and certainly months, on the Petition to Revoke. I told you it was set. You've had your hearing.

DEFENDANT: This is what I'm asking, Your Honor.

THE COURT: Okay.

DEFENDANT: Is I, I presented the day of sentencing the paperwork that showed there—it came back to where there was one meeting or probation that I, I didn't attend, and I—[previous appointed counsel] submitted the paperwork showing that I had got it pro—

continued due to a doctor's hearing, or meet—or doctor's visit for a neurosurgeon.

THE COURT: I'm going to stop you again.

DEFENDANT: Okay.

THE COURT: This is evidence you've already presented at that hearing, correct, you just told me?

DEFENDANT: No, this was at sentencing.

THE COURT: Okay.

DEFENDANT: And it was, I—you set it to your side. You never—I just—I don't think it was presented. This is why I filled out the appeal, so that in the appeal I found out the process. First I have my hearing again, and there won't be no probation where I'm—where I missed any probation meeting. I was—okay, now, what happened—

THE COURT: Okay, Mr.—what—you've already asked—

DEFENDANT: Okay, what I'm asking is virtually instead of—if I'm regiven [*sic*] this chance, I don't want the hearing. I want, I want to plead out. They, they was offering me a year, but I want to plead out to 30 months.

THE COURT: That doesn't happen. You don't get to choose that after the fact. Your motion for a new hearing that you just said you don't want, you admitted—you want to, I guess, admit you violated your probation. We're not going to do that. We've already had a hearing where

I found you violated your probation. Your probation was revoked and you were resentenced, so your motion for a new hearing is denied.

DEFENDANT: Okay. As a—as a—technically where this is coming from or whatever for a sentence reduction, now the other part is the reason these cases are—

THE COURT: If you're asking to reduce your sentence, that motion is denied as well.

DEFENDANT: Well, I haven't stated why yet, Your Honor. I have heart conditions. I have two bad heart valves and an aneurysm, but the doctor—I can't—I was—I was supposed to went [*sic*] for an echogram. I'm not getting the care. Eventually they're going to crack me open and— anyway, it's—the aneurysm's an inch from my heart on the aorta, and one of the bad heart valves is on—at a aorta. The two of them go together. Anyway, if—if that's—that's all I have, Your Honor.

THE COURT: Okay. Your motion for new hearing is denied because you wanted to admit, but anyway that's denied, and your motion for reduction of sentence is denied as well."

¶ 12      This appeal followed.

¶ 13                                 II. ANALYSIS

¶ 14      On appeal, defendant argues the trial court (1) failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting his waiver of counsel, (2) violated his due process rights by denying him a meaningful opportunity to be heard at the

hearing on his postsentencing motions, and (3) imposed an unauthorized extended-term sentence of imprisonment.

¶ 15                                    A. Compliance With Rule 401(a)

¶ 16        Defendant argues the trial court deprived him of his right to counsel by failing to substantially comply with Rule 401(a) before accepting his waiver of counsel. Defendant concedes he did not raise this issue in the trial court but requests that we nonetheless address it under the second prong of the plain-error doctrine. We review the trial court's compliance with a supreme court rule *de novo*. See, *e.g.*, *People v. Breedlove*, 213 Ill. 2d 509, 512 (2004).

¶ 17        "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Plain-error review is appropriate in the following circumstances:

> "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

"The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613.

¶ 18        "Supreme Court Rule 401(a) governs the trial court's acceptance of an accused's waiver of counsel. Pursuant to Rule 401(a), certain admonishments must be given by the trial

court before a defendant may be found to have knowingly and intelligently waived counsel." *People v. Haynes*, 174 Ill. 2d 204, 235-36 (1996). Rule 401(a) (eff. July 1, 1984) provides:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
>> (1) the nature of the charges;
>>
>> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>>
>> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

Our supreme court has noted that strict compliance with the rule is not required for an effective waiver of counsel. See *Haynes*, 174 Ill. 2d at 236. "Rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Id.*

¶ 19        Here, it is undisputed the court failed to admonish defendant in accordance with Rule 401(a) before accepting his waiver of counsel. Nonetheless, we find no error, as the court was not required to admonish defendant pursuant to Rule 401(a) under the circumstances.

¶ 20        In *People v. Young*, 341 Ill. App. 3d 379, 387 (2003), this court addressed the question of "whether it is mandatory that a court comply with the technical requirements of

Rule 401(a) when a defendant discharges his attorney late in the proceedings, [*i.e.*], after trial."

In that case, after the defendant had been convicted and sentenced to three years' imprisonment, he filed a motion to reconsider sentence and a *pro se* motion alleging ineffective assistance of counsel. *Id.* at 382. The defendant appeared at the hearing on his motions without counsel, and the court gave him a choice between continuing with the services of his counsel or representing himself. *Id.* The defendant chose self-representation, and the court accepted his waiver of counsel without providing the admonishments contained in Rule 401(a). *Id.*

¶ 21    On appeal, the defendant argued the court had erred in accepting his waiver of counsel without first admonishing him pursuant to Rule 401(a). *Id.* at 387. We rejected the defendant's argument, holding instead that the "plain language and logic of Rule 401(a) does not require admonishing a defendant who has been convicted and sentenced of the nature of the charge for which he was just convicted and the sentence he just received." *Id.* Instead, we found, "[t]he language of Rule 401(a) manifests only the intent to deal with defendants who are considering a waiver of counsel at the initial-appointment stage of the proceedings." *Id.* Thus, because the *Young* defendant had already been convicted and sentenced, while being represented by counsel, this court concluded it "would have been useless" for the court to comply with the rule since the defendant "already knew everything a Rule 401(a) admonishment would have told him." *Id.*

¶ 22    We find *Young* instructive under the circumstances of the instant case. Like the defendant in *Young*, defendant here was represented by counsel up until the hearing on his postsentencing motions and was therefore "more likely to understand the workings of the system than a defendant who first appears in court." *Id.* Moreover, because defendant had already been convicted, sentenced, and resentenced by the time the trial court accepted his waiver of counsel,

he was not still facing any charge or possible sentence. See *id.* Thus, compliance with the rule was unnecessary in this case, as defendant "already knew everything a Rule 401(a) admonishment would have told him." *Id.* Accordingly, we reject defendant's argument that his waiver of counsel was not knowing and voluntary due to the court's failure to comply with Rule 401(a).

¶ 23                                    B. Due Process

¶ 24        Defendant next argues the trial court violated his due process rights by denying him a meaningful opportunity to be heard at the hearing on his postsentencing motions. Defendant asks that we review his claim under the second prong of the plain-error doctrine.

¶ 25        "An individual's right to procedural due process is guaranteed by the United States and Illinois Constitutions." *People v. Bradley*, 2017 IL App (4th) 150527, ¶ 15 (citing U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. 1, § 2). "The fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009); see also *BAC Home Loan Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 28 ("The fundamental requirement of due process is the opportunity to be heard."). "Due process is a flexible concept, and not all situations calling for procedural safeguards call for the same kind of procedure." (Internal quotation marks omitted.) *Birkett*, 233 Ill. 2d at 201. "[W]e review a claim of the denial of due process *de novo*." *Bradley*, 2017 IL App (4th) 150527, ¶ 13.

¶ 26        Here, the following exchange ensued between defendant and the trial court at the hearing on defendant's postsentencing motions:

            "DEFENDANT: I asked for a new hearing due to my probation

            violation or Petition to Revoke. At the hearing it was a—when I came here

it was a status hearing, and [previous appointed counsel] said that he was going to have the hearing and that I would be put back on probation. Well, I knew I hadn't missed no probation and it was for failure to reply to probation. Well, you all know that I have had troubles. I, I had existing cases besides this one when I was put on probation. Well, I went to probation here, had it transferred to Greene County—

THE COURT: Mr. Taylor, we're not going to go back through all of it. I heard the hearing. I made my finding. I'm not going to reverse my finding. I've already heard the evidence.

DEFENDANT: They, they—

THE COURT: I've already found your probation was revoked. We had been set on that case for years, and certainly months, on the Petition to Revoke. I told you it was set. You've had your hearing.

DEFENDANT: This is what I'm asking, Your Honor.

THE COURT: Okay.

DEFENDANT: Is I, I presented the day of sentencing the paperwork that showed there—it came back to where there was one meeting or probation that I, I didn't attend, and I—[previous appointed counsel] submitted the paperwork showing that I had got it pro— continued due to a doctor's hearing, or meet—or doctor's visit for a neurosurgeon.

THE COURT: I'm going to stop you again.

DEFENDANT: Okay.

THE COURT: This is evidence you've already presented at that hearing, correct, you just told me?

DEFENDANT: No, this was at sentencing.

THE COURT: Okay.

DEFENDANT: And it was, I—you set it to your side. You never—I just—I don't think it was presented. This is why I filled out the appeal, so that in the appeal I found out the process. First I have my hearing again, and there won't be no probation where I'm—where I missed any probation meeting. I was—okay, now, what happened—

THE COURT: Okay, Mr.—what—you've already asked—

DEFENDANT: Okay, what I'm asking is virtually instead of—if I'm regiven [*sic*] this chance, I don't want the hearing. I want, I want to plead out. They, they was offering me a year, but I want to plead out to 30 months.

THE COURT: That doesn't happen. You don't get to choose that after the fact. Your motion for a new hearing that you just said you don't want, you admitted—you want to, I guess, admit you violated your probation. We're not going to do that. We've already had a hearing where I found you violated your probation. Your probation was revoked and you were resentenced, so your motion for a new hearing is denied.

DEFENDANT: Okay. As a—as a—technically where this is coming from or whatever for a sentence reduction, now the other part is the reason these cases are—

THE COURT: If you're asking to reduce your sentence, that motion is denied as well.

DEFENDANT: Well, I haven't stated why yet, Your Honor. I have heart conditions. I have two bad heart valves and an aneurysm, but the doctor—I can't—I was—I was supposed to went [*sic*] for an echogram. I'm not getting the care. Eventually they're going to crack me open and— anyway, it's—the aneurysm's an inch from my heart on the aorta, and one of the bad heart valves is on—at a aorta. The two of them go together. Anyway, if—if that's—that's all I have, Your Honor.

THE COURT: Okay. Your motion for new hearing is denied because you wanted to admit, but anyway that's denied, and your motion for reduction of sentence is denied as well."

¶ 27 Based on the above colloquy, we cannot say the court denied defendant an opportunity to be heard. With respect to defendant's motion for a new revocation hearing, the record shows the court provided defendant with an opportunity to be heard. The court allowed defendant to argue he should be granted a new revocation hearing because he had evidence that his failure to report to his probation officer was due to a conflicting doctor's appointment. However, the court noted that defendant had previously presented this evidence and it would not consider it again in the context of a motion for a new hearing. As for the motion to reduce sentence, the court allowed defendant to argue that his "heart conditions" entitled him to a reduction of sentence. After hearing his argument, the court concluded defendant failed to provide a justification for reducing his sentence. Accordingly, we reject defendant's arguments that the court denied him an opportunity to be heard on his postsentencing motions.

¶ 28                                                     C. Extended-Term Sentence

¶ 29           Lastly, relying on *People v. Taylor*, 368 Ill. App. 3d 703 (2006), defendant argues the trial court imposed an unauthorized extended-term sentence, in violation of section 5-8-2 of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-8-2 (West 2016)). Specifically, he contends that, "[b]ecause the record does not affirmatively demonstrate [his] knowledge at the time of the plea that he could be subject to an extended-term sentence ***, an extended-term sentence could not be imposed." Defendant acknowledges he forfeited this argument by failing to raise it in the trial court but asks that we review it under the second prong of the plain-error doctrine.

¶ 30           Section 5-8-2 of the Corrections Code (730 ILCS 5/5-8-2(b) (West 2016)) provides the following in pertinent part:

> "(b) If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that [an extended-term sentence] was a possibility. If it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice."

Whether the trial court complied with a statute in sentencing a defendant is a question of law reviewed *de novo*. See, *e.g.*, *People v. Fort*, 2017 IL 118966, ¶¶ 19-20.

¶ 31           In *People v. Eisenberg*, 109 Ill. App. 3d 98, 99 (1982), the defendant was convicted of two offenses and sentenced to a term of periodic imprisonment. The sentence of periodic imprisonment was subsequently revoked, and the trial court resentenced the defendant to extended-term prison sentences on each offense. *Id.* at 100. On appeal, the defendant argued "the extended term of imprisonment must be vacated because his original guilty pleas were

entered without notice to him of the possibility of imposition of such a sentence, under section 5-8-2 of the [Corrections Code]." *Id.* The *Eisenberg* court agreed, finding the record failed to show the defendant had been advised that an extended-term sentence was a possibility. *Id.* Because he had not been so advised, he "was not subject to an extended-term sentence at the time of his initial sentencing. Furthermore, since upon the revocation of periodic imprisonment the court could impose only another sentence that was available at the time of initial sentencing, the defendant was not subject to the extended term at the subsequent revocation hearing." *Id.* Thus, the *Eisenberg* court vacated the defendant's extended-term sentence and remanded for the imposition of a nonextended-term sentence. *Id.* at 101.

¶ 32        In *Taylor*, the defendant pleaded guilty to aggravated battery and criminal trespass to a residence. At the guilty plea hearing, the trial court admonished the defendant with respect to the sentencing range for aggravated battery by stating it was "punishable by a term in prison of 2 to 5 years ***. If extended term applies, it's 2 to 10 years." *Taylor*, 368 Ill. App. 3d at 704. In admonishing the defendant with respect to the offense of criminal trespass to a residence, the court stated that "[i]f extended term applies, the term is instead of 1 to 3 years in prison, it's 1 to 6 years in prison." *Id.* The court sentenced the defendant to a term of probation, which was subsequently revoked. *Id.* at 705. Upon revocation of probation, the court resentenced the defendant to concurrent, extended-term sentences of imprisonment. *Id.* at 706.

¶ 33        On appeal, the defendant relied on *Eisenberg* in arguing the trial court violated section 5-8-2(b) of the Corrections Code and imposed an unauthorized extended-term sentence because it had failed to admonish him that an extended-term sentence was a possibility before he pleaded guilty. *Id.* at 706-07. The *Taylor* court agreed, reasoning as follows:

"The record does not show that, at the guilty-plea hearing, defendant was admonished that an extended-term sentence was possible. [The trial court] told defendant that his conviction of aggravated battery was 'punishable by a term in prison of 2 to 5 years ***. *If* extended term applies, it's 2 to 10 years.' Similarly, in admonishing defendant about the potential sentence for criminal trespass to a residence, [the court] stated, '*If* extended term applies, the term is *** 1 to 6 years in prison.' Thus, [the trial court] did not inform defendant that he was eligible for extended-term sentencing; she merely stated that, *if* he were eligible, certain penalties could follow. This type of conditional, tentative admonishment leaves a defendant to speculate whether an extended-term sentence is indeed possible in his case. Therefore, it does not establish that section 5-8-2(b) *** has been satisfied." (Emphases in original.) *Id.* at 708.

The *Taylor* court, having found the record failed to demonstrate the defendant knew extended-term sentencing was a possibility, vacated the defendant's sentences. *Id.* at 709. The Second District further concluded that remand was unnecessary because the record established the trial court "intended to impose the maximum available sentence for each conviction." *Id.* Thus, pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan.1, 1967), the *Taylor* court reduced the "defendant's concurrent sentences to the maximum nonextended terms." *Id.*

¶ 34        The dissent in *Taylor* disagreed with the majority's conclusion that the trial court's sentencing admonishments failed to satisfy the requirements of section 5-8-2(b) of the Corrections Code. See *id.* at 710-11 (Kapala, J., dissenting in part). The dissent found the majority's reliance on *Eisenberg* misplaced. *Id.* at 710 (Kapala, J., dissenting in part).

Specifically, the dissenting justice noted that, while *Eisenberg* supports the proposition that the defendant must have knowledge an extended-term sentence is a possibility prior to entering a guilty plea, "*Eisenberg* does not address what statement by a trial court sufficiently informs a defendant of the possibility that he could receive an extended-term sentence." *Id.* (Kapala, J., dissenting in part). Instead, the statute requires only that prior to entering a plea, a defendant must have knowledge that an extended-term sentence is a possibility. *Id.* at 710-11 (Kapala, J., dissenting in part). According to the dissent, "by using the term 'if,' the trial court specifically indicated that extended-term sentencing may or may not apply and, thus, suggested that it was a possibility for defendant." *Id.* at 711 (Kapala, J., dissenting in part).

¶ 35        Here, defendant pleaded guilty to a Class 4 felony, which carried a nonextended-term sentencing range of 1 to 3 years' imprisonment and an extended-term sentencing range of 3 to 6 years' imprisonment. See 730 ILCS 5/5-4.5-45(a) (West 2016). In admonishing defendant, the trial court informed him that he faced a sentencing range of 1 to 6 years' imprisonment. We agree with the dissent in *Taylor* and conclude the court's admonishment in this case provided defendant with the knowledge that an extended-term sentence was a possibility. As the dissent in *Taylor* noted, the statute requires only that a defendant know an extended-term sentence is a possibility before pleading guilty; it does not require that the trial court use any specific language when admonishing a defendant. *Taylor*, 368 Ill. App. 3d at 710-11 (Kapala, J., dissenting in part). Here, by admonishing defendant that he faced a maximum sentence of six years' imprisonment, the trial court informed defendant that an extended-term sentence was a possibility. Moreover, unlike the trial court in *Taylor*, the trial court here did not use conditional language when explaining the applicable sentencing range. In

- 18 -

other words, the admonishments given in this case differed from the "conditional, tentative admonishments" at issue in *Taylor*. Accordingly, we reject defendant's argument.

¶ 36                                III. CONCLUSION

¶ 37          For the reasons stated, we affirm the trial court's judgment.

¶ 38          Affirmed.