2025 IL App (4th) 241516-U

NOS. 4-24-1516, 4-24-1517, 4-24-1518, 4-24-1519 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| ROBERT F. BARNES, | ) | Nos. 24CM83 |
| Defendant-Appellant. | ) | 24CF89 |
| | ) | 24CF140 |
| | ) | 24CF141 |
| | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court (1) did not err when it used
conditional language to inform defendant he was extended-term eligible,
(2) sufficiently informed defendant of the sentencing consequences prior to his
admission into drug court, and (3) did not impose an excessive sentence.

¶ 2    In July 2024, defendant pleaded guilty to possession of methamphetamine (720

ILCS 646/60(a) (West 2024)) in two different cases and to possession of a stolen vehicle (625

ILCS 5/4-103(a)(1) (West 2024)). Pursuant to his plea agreement, defendant was admitted into

the Henry County drug court program. In September 2024, following a hearing, defendant was

dismissed from the program. In November 2024, he was sentenced to eight concurrent years'

imprisonment for the aforementioned offenses. On appeal, defendant argues the trial court

committed plain error by failing to properly admonish him pursuant to section 5-8-2(b) of the

Unified Code of Corrections (Code) (730 ILCS 5/5-8-2(b) (West 2024)) and section 25(b) of the Drug Court Treatment Act (Act) (730 ILCS 166/25(b) (West 2024)). Additionally, he argues the court imposed an excessive sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In Henry County case No. 24-CF-89, defendant was charged with possession of methamphetamine (720 ILCS 646/60(a) (West 2024)) for knowingly possessing less than five grams of methamphetamine and driving while his license was revoked (625 ILCS 5/6-303(a) (West 2024)) on March 26, 2024. In Henry County case No. 24-CF-140, he was charged with possession of methamphetamine (720 ILCS 646/60(a) (West 2024)) for knowingly possessing less than five grams of methamphetamine on May 7, 2024. In Henry County case No. 24-CF-141, he was charged with possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2024)) for possessing, on May 3, 2024, a 2012 Chevrolet Cruze, knowing it to have been stolen. In Henry County case No. 24-CM-83, he was charged with two counts of battery (720 ILCS 5/12-3(a)(1), (a)(2) (West 2024)) for punching Francis Sturm.

¶ 5         In July 2024, defendant pleaded guilty to (1) possession of methamphetamine as charged in case No. 24-CF-89, (2) possession of methamphetamine as charged in case No. 24-CF-140, (3) possession of a stolen vehicle as charged in case No. 24-CF-141, and (4) two counts of battery as charged in case No. 24-CM-83 in exchange for being accepted into the Henry County drug court program. Pursuant to his plea agreement, the trial court admonished defendant he was eligible for a prison sentence for possessing methamphetamine in case No. 24-CF-89 "for a period of two to five years, up to ten years if you're extended-term eligible." Regarding his plea for possessing methamphetamine in case No. 24-CF-140, the court admonished defendant he was subject to the "same penalties" as in case No. 24-CF-89.

Regarding his plea to possessing a stolen vehicle in case No. 24-CF-141, the court admonished defendant he was eligible for a prison sentence of "three to seven years, up to 14 years if you're extended-term eligible." Lastly, regarding his plea to battery in case No. 24-CM-83, the court admonished defendant it was "punishable by up to 364 days in the county jail." The court asked defendant if he understood what he was "charged with and what the potential penalties are?" Defendant replied, "Yes, Your Honor."

¶ 6        The State provided a factual basis for the plea agreement, and the trial court found defendant's plea was made knowingly and voluntarily. The court also stated defendant understood the charges and the "potential penalties."

¶ 7        The record shows defendant signed a waiver of jury trial and plea of guilty. He subsequently signed a consent to participate in the drug court program. Just above defendant's printed and signed name, the consent document states in bold, all-capital letters "[DEFENDANT] UNDERSTAND[S] THAT THE DRUG COURT PROGRAM MAY BE AN OPPORTUNITY FOR [HIM] TO AVOID CONVICTION, JAIL AND/OR PRISON."

¶ 8        The trial court asked defendant if he had reviewed the consent document and had any questions pertaining to it. Defendant replied "I read the mail pretty good. I'm ready, yeah." The court further stated defendant did not "have to stay in [drug court], but there certainly would be other consequences if [he] fail[ed] to do so." The court admitted defendant into the drug court program and commented that drug court would require significant effort on defendant's part to successfully complete. Defendant subsequently stated: "No. I appreciate it. Prison's [*sic*] easy for me. I'm doing [drug court] because it's not going to be easy. It's what I need to do."

¶ 9        On July 16, 2024, defendant appeared for his first drug court appearance, wherein he admitted to smoking cannabis. The trial court expressed appreciation for defendant's honesty

and admonished him that cannabis use would not be permitted in drug court going forward.

¶ 10          On July 23, 2024, defendant appeared in drug court, wherein the trial court stated he appeared to be "a little more stable." Defendant agreed and stated he had missed an Alcoholics Anonymous meeting the previous day. The court instructed defendant to focus on organization and scheduling to avoid missing any further meetings.

¶ 11          On July 30, 2024, defendant failed to appear for drug court, and a warrant for his arrest was issued.

¶ 12          On September 24, 2024, defendant appeared in drug court. The trial court informed defendant the State would be filing a petition to revoke his participation in drug court. The court issued defendant a sanction for his first failed drug test and remanded him to jail until the hearing on the State's petition to revoke.

¶ 13          On September 25, 2024, the State filed a petition to revoke defendant's 24-month drug court program participation, alleging defendant violated the terms by (1) testing positive for methamphetamine on July 24, 2024, (2) failing to report for a scheduled drug screening on July 27, 2024, (3) failing to attend drug court on July 30, 2024, (4) failing to report to Bridgeway for treatment four times a week as required since July 30, 2024, and (5) failing to provide at least three support group meeting verifications per week as required since July 30, 2024.

¶ 14          On September 26, 2024, a hearing on the State's petition occurred. Defendant informed the trial court he intended to admit all of the allegations. The court stated it wanted to "go over what [defendant was] charged with and what the potential penalties were, what [he] was originally convicted of, make sure [he] understand[s] those." The court informed defendant he was subject to "two to five years, up to ten years if you're extended-term eligible" for case No. 24-CF-89. Regarding case No. 24-CF-140, the court stated he was subject to the "same exact

penalties that I just read to you in regards to [case No.] 24[-]CF[-]89." Defendant stated he understood. Regarding case No. 24-CF-141, the court informed defendant he was subject to "three to seven years, up to 14 years if you're extended-term eligible." Regarding case No. 24-CM-83, the court informed defendant he was subject to 364 days in the county jail. The court then asked defendant if he understood "what the original charges were and what the potential penalties" were. Defendant said, "I do, Your Honor." The court accepted defendant's admission as knowing and voluntary.

¶ 15    The trial court then turned to the issue of whether defendant would be permitted to continue participating in drug court or be dismissed from it. Defendant testified on his own behalf. He testified he would do "anything" to remain in drug court. He stated he was a drug addict who has had a drug problem his entire life. He stated he had relapsed and then "panicked." He stated his relapse "ruined everything" and that he had become homeless.

¶ 16    Amberleigh Underwood, a drug court officer, testified on behalf of the State and stated defendant told her she "would know when [defendant] was done [with drug court participation] because he wouldn't show up anymore." No further evidence was presented.

¶ 17    The trial court subsequently dismissed defendant from the drug court program and ordered a presentence investigation report (PSI).

¶ 18    A sentencing hearing occurred on November 19, 2024. The PSI was admitted into evidence without any notable additions or corrections. The PSI showed numerous juvenile offenses. Defendant's adult criminal record revealed numerous traffic and misdemeanor offenses, many of which were drug-related . Defendant also had numerous felony convictions, including, but not limited to, aggravated battery to a peace officer and obstruction of justice in 2006, for which he received probation. His probation was subsequently revoked, and he was

sentenced to three years' imprisonment. In 2006, he was convicted of burglary and sentenced to three years' imprisonment. In 2011, he was convicted of possession of methamphetamine and sentenced to two years' imprisonment. In 2013, he was convicted of manufacturing methamphetamine and sentenced to six years' imprisonment. In 2018, he was convicted of aggravated fleeing or eluding police and sentenced to three years' imprisonment. In 2018, he was also convicted of possessing a stolen vehicle and sentenced to six years' imprisonment. In 2020, he was convicted of burglary and received probation, from which he was unsuccessfully discharged. In 2022, he was convicted of possessing methamphetamine and aggravated fleeing and eluding and sentenced to three years' imprisonment.

¶ 19    No evidence in mitigation was offered. However, defendant made an unsworn statement. He stated he struggled with addiction his entire life and, after he failed his first drug test while in drug court, he "panicked." He said he had spent "12 years" of his life in prison and believed using drugs "doesn't help [him]. It makes [him] worse." He said there was no reason he failed to attend Bridgeway because he lived "two blocks" away from it. He said he had a "good job." He reiterated prison would not help him. He noted his grandmother was dying and that "really [was] hitting [him] hard."

¶ 20    The trial court stated it had considered the nature and circumstances of the offenses, the PSI, the statutory factors in mitigation and aggravation, any relevant nonstatutory factors, defendant's unsworn statement, the arguments from the parties, the cost of incarceration, and the rehabilitative potential of defendant. The court noted, as a mitigating factor to his felony convictions, defendant's conduct neither caused nor threatened serious physical harm to another. The court stated defendant had "a long criminal history," which included violence. The court stated defendant's history did not support the factor that the circumstances were unlikely to recur

"because they keep recurring over and over and over again." The court found defendant's character and attitude indicated he was likely to commit another crime, he had failed to get his drug problem under control despite multiple chances, he was not likely to comply with probation, his prior juvenile delinquency and criminal history were aggravating factors, his rehabilitative potential was "low," and probation would deprecate the seriousness of the offenses and be inconsistent with the ends of justice.

¶ 21　　　　The trial court merged the battery convictions in case No. 24-CM-83 and sentenced defendant to time served. Regarding the convictions for (1) possession of methamphetamine in case No. 24-CF-89, (2) possession of methamphetamine in case No. 24-CF-140, and (3) possession of a stolen vehicle in case No. 24-CF-141, the court sentenced defendant to three concurrent eight-year prison terms.

¶ 22　　　　Defendant filed a motion to reconsider, arguing his sentence was excessive given the facts and circumstances in his life at the time he had been charged with the offenses. The trial court denied defendant's motion.

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　On appeal, defendant argues the sentencing court committed plain error when it failed to properly admonish him pursuant to section 5-8-2(b) of the Code (730 ILCS 5/5-8-2(b) (West 2024)) and section 25(b) of the Act (730 ILCS 166/25(b) (West 2024)) before imposing sentence. Alternatively, he argues his counsel was ineffective for failing to preserve these issues on appeal. Lastly, he argues his sentence was excessive because the court failed to consider his rehabilitative potential and mitigating evidence, such as his drug addiction. We address each claim in turn.

¶ 26                          A. Insufficient Admonishment Claims

¶ 27          Defendant concedes his first two claims are forfeited because they were not

preserved in his motion to reconsider his sentence. He asks that we review them under the plain-

error doctrine. Where a defendant forfeits a sentencing claim, "we may review this claim of error

only if [the] defendant has established plain error." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

To establish plain error, "a defendant must first show that a clear or obvious error occurred." *Id.*

"In the sentencing context, a defendant must then show either that (1) the evidence at the

sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the

defendant of a fair sentencing hearing." *Id.* "The first step of plain-error review is determining

whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 28                          1. *Admonishment Pursuant to the Code Claim*

¶ 29          Defendant's first contention is the sentencing court committed plain error when it

failed to properly admonish him he was eligible for an extended-term sentence. He cites section

5-8-2(b) of the Code regarding extended-term sentencing, which states:

> "If the conviction was by plea, it shall appear on the record that the
>
> plea was entered with the defendant's knowledge that a sentence
>
> under this Section was a possibility. If it does not so appear on the
>
> record, the defendant shall not be subject to such a sentence unless
>
> he is first given an opportunity to withdraw his plea without
>
> prejudice." 730 ILCS 5/5-8-2(b) (West 2024).

Defendant notes the court used conditional language when discussing his extended-term

eligibility, which, he claims, did not satisfy the requirements of section 5-8-2(b) of the Code. He

cites *People v. Taylor*, 368 Ill. App. 3d 703 (2006), for the proposition that when a sentencing

court uses conditional extended-term admonishments, a defendant is left to speculate as to whether an extended-term sentence is possible and the requirements of section 5-8-2(b) are, thus, not satisfied.

¶ 30    In *Taylor*, the defendant pleaded guilty to two felonies, for which the trial court admonished him the first felony was punishable by two to five years in prison and " 'if extended term applies, it's 2 to 10 years.' " *Id.* at 704. For the second felony, the court admonished the defendant, " 'If extended term applies, the term is instead of 1 to 3 years in prison, it's 1 to 6 years in prison.' " *Id.* The defendant was sentenced to probation, which was later revoked, and the court sentenced defendant to concurrent extended-term sentences of 10 years' imprisonment. *Id.* at 706. The appellate court, applying *People v. Eisenberg*, 109 Ill. App. 3d 98 (1982), found the court's admonishments failed to inform the defendant he was eligible for extended-term sentencing, noting the court "merely stated that, *if* [the defendant] were eligible, certain penalties could follow." (Emphasis in original.) *Taylor*, 368 Ill. App. 3d at 708. The appellate court concluded the court's "conditional, tentative admonishment leaves a defendant to speculate whether an extended-term sentence is indeed possible in his case. Therefore, it does not establish that section 5-8-2(b) of the Code has been satisfied." *Id.* The appellate court went on to note the record reinforced the presumption the defendant did not know an extended-term sentence was possible, noting the trial court and the parties at the defendant's guilty plea hearing "expressed uncertainty about [the] defendant's prior convictions." *Id.* At the defendant's resentencing, the court and parties still "apparently did not realize" the defendant had a qualifying conviction for extended-term eligibility pursuant to section 5-5-3.2(b)(1) of the Code (730 ILCS 5-5-3.2(b)(1) (West 2004)). *Taylor*, 368 Ill. App. 3d at 708. Additionally, the defendant's postplea counsel had " 'attempted to explain' " extended-term eligibility to the defendant after he had pleaded guilty.

*Id.* The court concluded, "[T]he record creates doubt that, when defendant pleaded guilty, *anyone* realized that he was eligible for extended-term sentencing." (Emphasis in original.) *Id.* at 708-09.

¶ 31    The dissent in *Taylor* disagreed with the majority's conclusion the trial court's sentencing admonishments failed to satisfy the requirements of section 5-8-2(b) of the Code. *Id.* at 710-12 (Kapala, J., dissenting in part). The dissent noted:

> "*Eisenberg* does not address what statement by a trial court
> sufficiently informs a defendant of the possibility that he could
> receive an extended-term sentence. Unlike the case at bar, in
> *Eisenberg* there was no indication in the record the court informed
> the defendant of the possibility of an extended-term sentence." *Id.*
> at 710 (Kapala, J., dissenting in part).

The dissent further stated:

> "The majority concludes the trial court judge's statement to
> defendant that '[i]f extended term applies, it's 2 to 10 years' was
> too tentative to demonstrate that [the] defendant had knowledge
> that an extended-term sentence was a possibility. I disagree.
> Black's Law Dictionary defines a 'possibility' as, "An event that
> may or may not happen." Black's Law Dictionary 1185 (7th ed.
> 1999). Accordingly, section 5-8-2(b) required only that the record
> reflect that [the] defendant knew that an extended-term sentence
> may or may not occur. When the trial court judge informed [the]
> defendant of the consequences of extended-term sentencing, she

alerted [the] defendant to the fact that a sentence of 2 to 10 years' imprisonment may or may not happen. I do not believe that using the term 'if' before 'extended term' negates the defendant's knowledge of the possibility of extended-term sentencing. In fact, by using the term 'if,' the trial court specifically indicated that extended-term sentencing may or may not apply and, thus, suggested that it was a possibility for [the] defendant." *Id.* at 711 (Kapala, J., dissenting in part).

¶ 32 In the instant case, defendant is requesting this court to construe section 5-8-2(b) as the majority did in *Taylor*. However, we agree with the dissent in *Taylor*. See, *e.g.*, *People v. Taylor*, 2022 IL App (4th) 210614-U, ¶ 35 (where this court—in a factually distinguishable case—had previously agreed with the dissent in *Taylor*). "The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature." *People v. Clark*, 2019 IL 122891, ¶ 18. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 20. "Issues requiring statutory interpretation are questions of law subject to *de novo* review." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27.

¶ 33 The pertinent phrase from section 5-8-2(b) is "it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility." 730 ILCS 5/5-8-2(b) (West 2024). Thus, the critical question is whether the trial court's admonishments, which used conditional language, were sufficient to inform defendant an extended-term sentence was a *possibility*.

¶ 34 As the dissent in *Taylor* noted, "possibility" refers to something that may or may

not happen. *Taylor*, 368 Ill. App. 3d at 711 (Kapala, J., dissenting in part); see Black's Law Dictionary (12th ed. 2024) (showing this remains a definition of possibility); see also *People v. Hill*, 409 Ill. App. 3d 451, 454 (2011) ("The ordinary and popularly understood meaning of a word may be determined by utilizing the dictionary definition."). Here, when the trial court informed defendant of the possible penalties, it informed him of the extended-term sentences by saying, "if you're extended-term eligible." The court's mere use of "if" did not remove the specter of the possibility that defendant was eligible for an extended-term sentence.

¶ 35 There are finite sets of instantiations where a defendant can be admonished as it relates to extended-term sentence eligibility. In one set, the court makes no mention of extended-term sentences regardless of whether a defendant is extended-term eligible, and as such, the court has failed to inform a defendant of the possibility of such a sentence. For example, this appeared to be the case in *Eisenberg*, upon which the majority in *Taylor* relied. In the other set, the court makes mention of extended-term sentencing, whether correct or not, and the defendant, for better or for worse, *i.e.*, whether it would be error not, is now privy to its possibility. This case falls within this latter set. This is not to say a court's mere mention of extended-term sentencing automatically entails a defendant is subject to such sentencing in all cases. The clearest example would involve a court mentioning extended-term sentencing and explicitly telling a defendant they would not be subject to such potential penalties. However, that is not the case here.

¶ 36 The trial court's use of "if" in this case did not remove the possibility defendant was subject to an extended-term sentence. "If" as a conjunction means "in the event that" or "on condition that." https://www.merriam-webster.com/dictionary/if#dictionary-entry-2 (last visited July 24, 2025). "If," thus, connotes something that may happen. See, *e.g.*, *Golden v. Puccinelli*, 2016 IL App (1st) 150921, ¶ 43 (Gordon, J., dissenting in part) (defining "if" as something that

may happen). Therefore, by the very nature of using "if," the court created a possibility. When the court used "if," it was an indicative conditional statement about a possible set of future sentencing consequences.

¶ 37        While it remains best practice for trial courts and parties to make matters, such as sentencing, explicitly clear as early in the proceedings as possible, the court's use of conditional language here did not obviate the fact defendant had been informed of the possibility he was subject to an extended-term sentence. We find the record sufficiently demonstrates defendant knew or should have known he was subject to an extended-term sentence and, thus, section 5-8-2(b) of the Code was satisfied. Accordingly, defendant has not shown an error occurred, and without error, there can be no plain error. Defendant's alternative claim, *i.e.*, counsel was ineffective for failing to preserve this issue, fails for the same reason. See *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47 ("Similarly, the failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine.").

¶ 38                    2. *Admonishment Pursuant to the Act Claim*

¶ 39        Defendant next contends the trial court failed to comply with section 25(b) of the Act by not informing him that if he failed to meet the conditions of the drug court program, he could be sentenced for the offenses to which he pleaded guilty. Section 25(b) states:

> "The judge shall inform the defendant that if the defendant fails to
> meet the conditions of the drug court program, eligibility to
> participate in the program may be revoked and the defendant may
> be sentenced or the prosecution continued as provided in the
> [Code] for the crime charged." 730 ILCS 166/25(b) (West 2024).

¶ 40      The State argues section 25(b) should be given a directory reading rather than a mandatory reading. Based on our review of the record, we find a mandatory/directory distinction is not necessary because the record shows defendant was both informed and knew his failure to meet the conditions of drug court could result in him being incarcerated.

¶ 41      The record shows the trial court only explicitly informed defendant of "other consequences" for failing to meet the conditions of the drug court program. The consent document defendant signed to enter drug court explicitly admonished defendant that incarceration was an alternative consequence. The court specifically asked defendant about this document and whether he understood it. Defendant stated he read it "pretty good" and understood it. Section 25(b) does not direct how or what words must be used for a court to inform a defendant of the consequences of failing to meet the conditions of drug court. Again, we reiterate it is best practice for courts and parties to be explicitly clear as early in the relevant proceedings as possible of a defendant's potential consequences. The record here demonstrates defendant was informed of other consequences, specifically, incarceration, as an alternative to drug court. Additionally, defendant volunteered that prison was "easy" for him, but participating in drug court would not be, which gives further credence he was well aware of what failing to participate in or successfully complete drug court would entail. Therefore, we find the court's admonishments satisfied section 25(b). Accordingly, defendant has failed to show error occurred, and without error, there can be no plain error. Because he has failed to show error, he cannot, alternatively, show ineffective assistance of counsel. *Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 42                          B. Excessive Sentence Claims

¶ 43      Lastly, defendant argues his sentence was excessive because there was substantial mitigating evidence the sentencing court failed to consider. He notes the court described his

- 14 -

rehabilitative potential as "low" and "small" and referenced his previous rehabilitative efforts were unsuccessful, leaving punishment as the alternative. He contends this shows the court failed to consider his rehabilitative potential. He also maintains the court failed to consider the highly mitigating evidence his drug addiction played in his criminal conduct.

¶ 44     "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 45     Because defendant was only sentenced to prison for the felony offenses for which he pleaded guilty, we focus exclusively on those convictions. Defendant pleaded guilty to possession of less than five grams of methamphetamine in two distinct cases, both Class 3 felonies. See 720 ILCS 646/60(b)(1) (West 2024). He also pleaded guilty to possession of a stolen vehicle, a Class 2 felony. See 625 ILCS 5/4-103(b) (West 2024). Pursuant to the Code, each possession of methamphetamine conviction subjected defendant to a prison term of 2 to 5 years, with an extended-term sentencing range of 5 to 10 years. See 730 ILCS 5/5-4.5-40(a) (West 2024). For possession of a stolen vehicle, defendant was subject to a prison term of 3 to 7

years, with an extended-term range of 7 to 14 years. *Id.* § 5-4.5-35(a). The trial court found defendant was extended-term eligible and sentenced him to eight years' imprisonment for all three convictions, to be served concurrently. See *id.* § 5-8-2(a), 5-5-3.2(a). Because defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 46          To rebut this presumption, defendant's first contention is the trial court's description of his rehabilitative potential as "low" and "small" and reference to his previous rehabilitative efforts as unsuccessful showed the court failed to consider his rehabilitative potential.

¶ 47          The trial court is not required to recite each factor it considers when sentencing a defendant. *People v. McDonald*, 322 Ill. App. 3d 244, 251 (2001). Where mitigating evidence is before the court, it is presumed the court considered it. *Id.* Additionally, "that presumption will not be overcome without explicit evidence from the record that the *** court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

¶ 48          The fact that the sentencing court described defendant's rehabilitative potential as low demonstrates, in contrast to defendant's argument, the court considered his rehabilitative potential, found the lack of it aggravating, and concluded punishment was necessary. Both, punishment and rehabilitative potential are relevant considerations at sentencing. *People v. Ferguson*, 2021 IL App (3d) 200041, ¶ 12. Given defendant's lengthy criminal history, which has included numerous prison sentences and failed probation sentences, we find the court's diminished view of defendant's rehabilitative potential reasonable. Accordingly, we find the court appropriately considered defendant's rehabilitative potential before imposing sentence.

¶ 49          Defendant also contends the trial court failed to consider the highly mitigating

evidence his drug addiction played in his criminal conduct. We disagree.

¶ 50    First, the Code does not identify drug addiction as a factor in mitigation or aggravation, and "the [sentencing] court is not required to view drug addiction as a mitigating factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105. However, for the sake of argument, even if we were to consider drug addiction as a nonstatutory mitigating factor in this case, the mere fact a mitigating factor exists does not outweigh the various aggravating factors the trial court noted in its decision. A court is not required to afford greater weight to mitigating factors than to the severity of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); see *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting the seriousness of the offense is the most important sentencing factor). Nor does the presence of mitigating factors require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Ultimately, the court was in a better position to observe defendant's conduct and weigh the need for a harsher sentence. Accordingly, we find defendant's sentence was not unduly excessive and, thus, not an abuse of discretion.

¶ 51                          III. CONCLUSION

¶ 52    For the reasons stated, we affirm the trial court's judgment.

¶ 53    Affirmed.